# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **HERIBERTO GIERBONLINI ORTIZ** | : | **Case Number:** 4:24-cv-33 |
| c/o Barron, Peck, Bennie & Schlemmer | : | |
| 3074 Madison Rd. | : | **Judge:** |
| Cincinnati, Ohio 45209, | : | |
| and | : | |
| **WANDA DIAZ** | : | |
| c/o Barron, Peck, Bennie, & Schlemmer | : | |
| 3074 Madison Rd | : | |
| Cincinnati, OH 45209 | : | |
| Plaintiffs, | : | |
| -vs- | : | |
| **CITY OF YOUNGSTOWN** | : | |
| 26 South Phelps Street | : | |
| Youngstown, OH 44503 | : | |
| and | : | |
| **TYL SRBINOVICH** | : | |
| (In official and individual capacities) | : | |
| 116 W Boardman St | : | |
| Youngstown, OH 44503 | : | |
| and | : | |
| **IVAN THOMAS** | : | |
| (In official and individual capacities) | : | |
| 116 W Boardman St | : | |
| Youngstown, OH 44503 | : | |
| Defendants. | : | |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF WITH JURY DEMAND

Plaintiff Heriberto Gierbonlini Ortiz states the following for his Complaint against Defendants Tyl Srbinovich, Ivan Thomas, and the City of Youngstown:

1. This is an action against a police force and its officers under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution because Defendants decided to act as civil courts and unlawfully involved themselves in a landlord and tenant dispute without authority in violation of the law. When Plaintiff Ortiz refused to submit to Defendants' unlawful authority to enter and possess property, he possessed in violation of the Fourth Amendment, Defendants brutalized Plaintiff Ortiz without reason, and they put him in a hospital for six days.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction because the primary claims here fall under 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

3. Jurisdiction and venue are proper in this Court because the matters alleged occurred in Mahoning County, Ohio.

## PARTIES

4. Plaintiff Heriberto G. Ortiz ("Ortiz") is a resident of Mahoning County, Ohio.

5. Plaintiff Wanda Diaz ("Diaz") is the wife of Ortiz and a resident of Mahoning County, Ohio.

6. Defendant City of Youngstown ("City") is a municipal corporation located in Mahoning County, Ohio.

7. Defendant Tyl Srbinovich ("Srbinovich") is a Youngstown police officer, and he is named here in both his official and individual capacities.

8. Defendant Ivan Thomas ("Thomas") is a Youngstown police officer, and he is named here in both his official and individual capacities.

9. Defendants Srbinovich and Thomas shall be collectively referred from time to time as to the "Officer Defendants".

10. The City, Police Department, and the Police Officer Defendants shall be collectively referred to as "Defendants."

## BACKGROUND INFORMATION

11. Plaintiff Ortiz is and has been the property manager of 406 West Chalmers Ave. Youngstown, Ohio (the "Property") since 2019.

12. The Property is owned by Ortiz's cousin, Rolando Ortiz, a resident of Puerto Rico.

13. Deborah Martinez Rios ("Rios") stayed in the Property for a brief period, beginning on November 15, 2022.

14. During Rios' stay, she irreparably damaged brand new carpeting.

15. After Rios destroyed this carpet, she vacated the Property removing all her property including clothing, pots/pans, dishes, and food.

16. After Rios vacated the Property, Ortiz discovered that all the lights were left on, and a toilet was running.

17. Ortiz then cancelled the utilities on November 29, 2022, except for the gas utilities which were in Rios' name and changed the locks to the Property.

18. Rios never paid rent.

19. Rios canceled the gas utility on December 1, 2022, which clearly communicated her absolute intent to completely vacate the Property.

20. While the Property was vacated, Plaintiff decided to make repairs, and he stayed in the house between November 30, 2022, and December 3, 2022.

21. Rios did not return to the Property at any time while Plaintiff was staying in the Property and repairing it.

22. On the afternoon of December 3, 2022, Plaintiffs Ortiz and Diaz received a call from Defendant Srbinovich.

23. Apparently, after vacating the Property, Diaz was attempting to force her way back into the Property.

24. Oddly, the Officer Defendants decided to take on the roles of the judiciary and make property determinations.

25. Plaintiff Diaz answered the phone, and she informed the officers that Rios was no longer a tenant.

26. Since Diaz is not fluent in English, Defendant Srbinovich seemingly did not understand Diaz, and Ortiz got on the phone.

27. Ortiz explained to Srbinovich that Rios no longer lived at the Property, and she had no belongings there.

28. The inquiry should have ended there.

29. Defendant Srbinovich and Thomas should have informed Rios that this was a civil matter, and they should not have gotten involved in the property dispute.

30. Instead, the Officer Defendants embarked on a campaign of false imprisonment, seizures, searches, battery, and other abuses of power to unlawfully make civil determinations of property rights without the due process of law.

31. Defendants Srbinovich and Thomas ordered Ortiz to come to the Property without the authority to do so.

32. When Ortiz arrived on scene with Diaz, he again advised Defendants Srbinovich and Thomas that Rios no longer lived at the Property, and that she had no belongings on the Property.

33. Defendants Srbinovich and Thomas ignored Ortiz's statements that Rios had vacated the Property.

34. Nonetheless, without any probable cause or authority to do so, the Defendants Srbinovich and Thomas demanded Ortiz and Diaz grant them access to private property to verify his statements.

35. Defendants Srbinovich and Thomas simply had no authority to use their collective force to coerce Ortiz into opening the door.

36. At this point, Defendants Srbinovich and Thomas were already engaged in the unlawful conduct of playing civil judge, and they were ordering Ortiz to take actions without lawful authority.

37. Defendants Srbinovich and Thomas had presented no search warrant because they had no search warrant.

38. After being coerced to let the Defendants Srbinovich and Thomas into the Property, the Defendants Srbinovich and Thomas could have and should have seen that Rios had no personal property in the Property.

39. Indeed, a cursory inspection would exhibit that she had no property there.

40. Although Defendants Srbinovich and Thomas claim that mail with Rios' name was inside the Property, anyone who understands mail knows that mail forwarding is not an immediate process.

41. Without any authority to do so, the Defendants then demanded that Ortiz and Diaz leave the premises so Rios could take possession of the Property.

42. Defendants Srbinovich and Thomas used their collective show of authority to force Ortiz to grant them access to a private residence without a warrant, and Defendants Srbinovich and Thomas then used their collective force to order Ortiz to leave the premises the owner gave him the lawful right to inhabit during his work.

43. Since Rios had vacated the Property, Ortiz strongly objected to the officers exceeding their authority and attempting to force him to leave the Property in the possession of Rios, who had destroyed it and vacated it.

44. At this point Defendants Srbinovich and Thomas were determined to continue to intimidate and punish Ortiz for his critical speech.

45. Ortiz then rightfully demanded that both Defendants Srbinovich and Thomas as well as Rios to leave the Property.

46. Defendants Srbinovich and Thomas ignored Ortiz's demands they leave this private residence, and Defendants Srbinovich and Thomas instead refused to leave and continued to use their collective force to order Ortiz without the authority to do so.

47. Defendants Srbinovich and Thomas then asked if Ortiz had any weapons.

48. Even though Defendants Srbinovich and Thomas had no right to demand anything or search him in a private residence, Ortiz, in response to the unlawful inquiry, still peacefully removed a pocketknife from his pocket and tossed it on a couch, which created no safety threat to the Defendants.

49. Despite Ortiz's compliance, he was treated as a threat to Defendants Srbinovich and Thomas and such compliance was used as the basis for Defendants Srbinovich and Thomas' subsequent and further unlawful treatment of Ortiz.

50. With no reasonable suspicion of a crime and without a warrant, Defendants Srbinovich and Thomas then decided to further abuse their power by demanding to search Ortiz's person.

51. Ortiz, who speaks limited English, placed is hands above his head, but turned his back on the Defendants Srbinovich and Thomas while they began unlawfully searching his person.

52. Because Ortiz understood the Defendants Srbinovich and Thomas were abusing their power, Ortiz asked Diaz to go get her cell phone to record and document the Defendants' improper conduct.

53. When Diaz left the Property to get her phone, Defendants Srbinovich and Thomas began physically battering Ortiz.

54. Defendants Srbinovich and Thomas threw Ortiz to the floor, twisted his arms, put weight on his back, and threatened him with a taser gun which they held point blank at his heart.

55. Ortiz was begging the Defendants Srbinovich and Thomas to stop battering him because Ortiz suffered from congestive heart failure.

56. Diaz returned to find the Defendants Srbinovich and Thomas on top of Ortiz with the taser mere inches from Ortiz's heart.

57. When Defendants Srbinovich and Thomas realized they were being filmed, they stopped pointing the taser at Ortiz's heart and put it away.

58. Shortly after Ortiz asked for a supervisor, the remaining Officer Defendants arrived on scene.

59. Defendants Srbinovich and Thomas and two other officers picked Ortiz off the floor, threw him on the couch, handcuffed him, and twisted his arms.

7

60. Ortiz advised the Officer Defendants that he had a bad back and shoulders, but they continued to put pressure on Ortiz's arms when they cuffed him.

61. After he was cuffed, Ortiz told the Officer Defendants the cuffs were too tight.

62. Diaz also repeated these facts to the Officer Defendants, so they would stop battering Ortiz.

63. The Officer Defendants ignored Ortiz's and Diaz's pleas.

64. Even though Ortiz and Diaz already identified themselves and each other, and they were inside the Property, The Officer Defendants continued to demand Ortiz's identification and threatened to prosecute Ortiz for refusing to comply.

65. After the Officer Defendants transferred Ortiz to Mahoning County Sheriff's Office ("MSCO"), Ortiz became ill and could not move his legs.

66. Instead of allowing Ortiz to gain his bearings and administering first aid, Defendants Srbinovich and Thomas lifted him up, put more pressure on Ortiz's elbows and then dragged Ortiz to a patrol car.

67. Defendants Srbinovich and Thomas then threw Ortiz chest and headfirst into the patrol car, and they broke several of his teeth on the seat of the cruiser.

68. Defendants Srbinovich and Thomas then transferred Ortiz to an ambulance.

69. Defendants Srbinovich and Thomas then failed to provide paramedics proper information, and Ortiz was administered two unknown medicines related to a non-existence overdose without his consent.

70. Clearly, Ortiz did not overdose.

71. Ortiz was there because the Officer Defendants manhandled and battered him.

72. The paramedics requested to remove Ortiz's handcuffs, so they could move his arms in front of him to properly administer care, but Srbinovich and Thomas refused.

73. While transferring Ortiz to St. Elizabeth hospital (the "Hospital") with his arms cuffed behind his back, Ortiz lost consciousness.

74. Ortiz regained consciousness in the hospital, but he was unable to communicate, and admitted as a John Doe.

75. Ortiz remained cuffed to a bed without any ability to communicate and nobody to advocate on his behalf.

76. Ortiz's complaints and concerns about care were consistently ignored, and he was mocked and yelled at when he asked questions or for assistance.

77. Ortiz was not provided with status updates regarding his condition.

78. Because the Officer Defendants pummeled him, Ortiz feared for his safety and could not sleep or eat.

79. Ortiz was not permitted to call anyone, including his wife, regarding his status for five days.

80. Diaz did not know what had happened to her husband until he was finally able to call her on December 8, 2022.

81. Days later, Ortiz was finally discharged, brought to jail, and arraigned.

82. The Incident Report attached hereto as Exhibit 1 (the "Incident Report") demonstrates the Defendants' improper conduct.

83. The Incident Report incorrectly states that Defendant Srbinovich first spoke with Ortiz when it was initially Diaz.

9

84. The Incident Report acknowledges that Defendant Srbinovich ordered that Ortiz meet him at the Property.

85. The Incident Report does not mention any basis to make such demands on Ortiz.

86. The Incident Report does not mention any suspicion of a crime because there was none.

87. The Incident Report does not state how Defendant Srbinovich was able to contact Ortiz as the landlord of the Property while being unable to ascertain Ortiz's identity and then arresting him for failing to comply with a demand for identification.

88. The Incident Report claims that Ortiz was argumentative, and Defendants Srbinovich and Thomas complain that Ortiz was not following their unlawful orders.

89. The Incident Report admits that Defendants Srbinovich and Thomas unlawfully ordered Ortiz to unlock the door.

90. The Incident Report does not mention any authority for this Order at this time, it does not mention any warrant, and it does not mention suspicion of any crime.

91. The Incident Report states that "It was explained to ORTIZ many times that Rios has established residence here and has to be legally evicted" even though Rios had vacated the Property, shut off the utilities, and removed all her property.

92. The Incident Report does not state how Defendants Srbinovich and Thomas even determined that Rios would have a right to enter property to which she did not have keys.

93. Although the Incident Report indicates that mail bearing Rios' name was in the Property, once Defendants Srbinovich and Thomas forced their way in, this is meaningless regarding possessory rights.

10

94. Simply stated, Defendants made civil determinations based on no evidence, and they played judge, jury, and batterer without any lawful authority or due process.

95. The Officer Defendants were not properly trained, they were not empowered to act as the final decisionmakers, they improperly filed charges according to official protocol, and they were never investigated or punished for their brutal actions.

## COUNT I – FIRST AMENDMENT FREE SPEECH
### (against all Defendants)

96. Ortiz restates all previous paragraphs.

97. The First Amendment protects speech, such as insults and objections to police conduct.

98. The Incident Report details in numerous places that Ortiz was argumentative with their orders.

99. Ortiz had every right to object to the Officer Defendants' orders because the Officer Defendants had no right or authority to order Ortiz to come to the Property or to force Ortiz to give them access to the Property.

100. Defendants retaliated against Ortiz, continually seized him, searched him, arrested him, and battered him in retaliation for his protected speech.

101. Defendants damaged Ortiz, and Ortiz is entitled to actual damages, punitive damages, compensatory damages, attorney fees, costs, and other relief.

## COUNT II – FOURTH AMENDMENT UNLAWFUL SEARCH AND SEIZURE
### (against all Defendants)

102. Ortiz restates all previous paragraphs.

103. The Fourth Amendment protects citizens against unlawful searches and seizures from officers.

104. The Officer Defendants may not search property without probable cause and/or a warrant.

105. The Officer Defendants may not seize a person without probable cause and/or a warrant.

106. The Officer Defendants here used their physical show of force, their claims of police authority, and physical contact to seize Ortiz and force him into the Property while the Officer Defendants were present.

107. The Officer Defendants had no warrant, and their own Report does not even articulate any actual or suspected crime or authority to force a seizure of Ortiz before entering the Property.

108. The Officer Defendants had no warrant, and their own Report does not even articulate an actual suspected crime or authority to force a search of the Property at issue.

109. Once inside the Property, the Defendants Srbinovich and Thomas unlawfully ordered Ortiz to leave even though Rios had no personal property in the Property.

110. Once inside the Property and throughout the arrest, the Officer Defendants unlawfully seized and searched Ortiz's person without probable cause or lawful authority to do so.

111. Defendants violated the Fourth Amendment of the United States Constitution because they unlawfully entered and searched the Property without

probable cause, and they unlawfully searched and seized Ortiz without probable cause or a warrant.

112. Defendants damaged Ortiz, and Ortiz is entitled to actual damages, punitive damages, compensatory damages, attorney fees, costs, and other relief.

## COUNT III – FOURTH AMENDMENT EXCESSIVE FORCE
### (against all Defendants)

113. Ortiz restates all previous paragraphs.

114. The Fourth Amendment protects citizens from unreasonable force.

115. The Officer Defendants may not batter people, especially those they have no cause to seize.

116. The Officer Defendants cannot use more force than is necessary even when permitted to cease a suspect of a crime.

117. After unlawfully seizing Ortiz and entering the Property, the Officer Defendants used excessive force.

118. Defendants damaged Ortiz, and Ortiz is entitled to actual damages, punitive damages, compensatory damages, attorney fees, costs, and other relief.

119. Ortiz restates all previous paragraphs.

## COUNT IV – PROCEDURAL DUE PROCESS
### (against all Defendants)

120. The Fourteenth Amendment protects citizens from being deprived of life, liberty, or property without the due process of law.

121. It is well known that property disputes, such as landlord/tenant possessory rights are civil matters requiring judicial determinations.

122. Procedural due process requires that a person is provided with notice and an opportunity to respond before he is deprived of his property or liberty interests.

123. Ortiz had a liberty interest to possess the Property at issue while he was working on the Property Rios had damaged.

124. Here, the Officer Defendants made a judicial determination that Rios—not Ortiz—had a right to possess the Property.

125. However, the Officer Defendants were wrong because she had abandoned the Property.

126. Regardless, it does not matter.

127. It is not in the Officer Defendants' authority to resolve civil disputes.

128. Nonetheless, Ortiz was the property manager, and he stayed in the Property and rehabilitated it after Rios had destroyed it and vacated it.

129. Defendants gave Rios possessory rights to property that did not belong to her without any due process.

130. Defendants further deprived Ortiz of his right to stay in the Property without due process of law.

131. Defendants damaged Ortiz, and Ortiz is entitled to actual damages, punitive damages, compensatory damages, attorney fees, costs, and other relief.

**COUNT V – FOURTH AMENDMENT MALICIOUS PROSECUTION**

**(against all Defendants)**

132. Ortiz restates all previous paragraphs.

133. Officers may not arrest or prosecute people without probable cause or in retaliation for their speech.

134. Here, the Officer Defendants lacked probable cause to enter the Property because they had no probable cause that a crime had occurred.

135. The Officer Defendants began falsely imprisoning Ortiz and using their authority to control his movement without probable cause to arrest him.

136. The Officer Defendants seized his body and battered Ortiz without probable cause.

137. Ortiz could not have obstructed any justice or resisted a lawful arrest because Defendants had no probable cause or a reasonable suspicion that Ortiz had committed any crimes when they began seizing and battering him.

138. The Officer Defendants arrested Ortiz and prosecuted him without probable cause to maliciously retaliate against Ortiz for arguing with Defendants' unlawful orders.

139. Defendants violated the Fourth Amendment of the United States Constitution.

140. Defendants damaged Ortiz, and Ortiz is entitled to actual damages, punitive damages, compensatory damages, attorney fees, costs, and other relief.

## COUNT VI – BATTERY

### (against the Officer Defendants)

141. Ortiz restates previous paragraphs here.

142. The Officer Defendants intentionally made harmful contact with Ortiz's person with the intent to physically hurt Ortiz.

143. The Officer Defendants did cause harmful contact with Ortiz's person.

15

144. The Officer Defendants damaged Ortiz, and Ortiz is entitled to actual damages, punitive damages, compensatory damages, attorney fees, costs, and other relief.

## COUNT VII – FALSE IMPRISONMENT

## (against the Officer Defendants)

145. Ortiz restates all previous paragraphs here.

146. The Officer Defendants used a show of physical force and their collective authority to keep Ortiz from moving freely.

147. The Officer Defendants acted willfully to deprive Ortiz of the ability to move freely.

148. The Officer Defendants damaged Ortiz, and Ortiz is entitled to actual damages, punitive damages, compensatory damages, attorney fees, costs, and other relief.

## COUNT VIII – LOSS OF CONSORTIUM

### (against the Officer Defendants as to state law claims under the court's supplemental jurisdiction)

149. Plaintiff Diaz restates all previous paragraphs here.

150. Plaintiff Diaz was deprived of her enjoyment of her husband's companionship during his hospital stay.

151. Plaintiff Diaz has lost time, the enjoyment of her life and lost her husband's utility around their home as a consequence of Defendants' actions.

152. As a result of Defendants' actions, Plaintiff Diaz has had to care for Plaintiff Ortiz due to and after his hospital stay.

16

153. Plaintiff Diaz has experienced emotional pain and suffering from witnessing the assault of Plaintiff Ortiz by Defendants.

154. Plaintiff Diaz did not know what happened to her husband between his arrest on December 3, 2023 until she received a phone call from him in the hospital on December 8, 2023

155. The Defendants acted willfully and deprived Diaz of her rights.

156. The Defendants damaged Diaz, and Diaz is entitled to actual damages, punitive damages, compensatory damages, attorney fees, costs, and other relief.

WHEREFORE, Ortiz respectfully asks that this Court find for him and awards him the following relief:

a. Compensatory damages;

b. Injunctive relief;

c. Interest;

d. Punitive damages;

e. Attorney fees;

f. Costs and expenses; and

g. Any and all other relief available.

Respectfully Submitted,

**/s/ Matt Miller-Novak**
Matthew Miller-Novak, Esq. (0091402)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
(513) 721-1350
MMN@BPBSLaw.com

                ***/s/ David J. Betras***
                David J. Betras (0030575)
                6630 Seville Drive
                Canfield, Ohio 44406
                Telephone: (330) 746-8484
                Facsimile: (330) 702-8280
                Email: dbetras@bkmlaws.com